**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

_____
                                                             )
MONEY CENTERS OF AMERICA, INC.,   )
as successor in interest by merger to              )
IGAMES ENTERTAINMENT, INC.,          )
and                                                              )
AVAILABLE MONEY, INC.,                       )
                                                             )
            Plaintiffs,                         )   C. A. No. 04-CV-1516 (KAJ)
                                                             )
    v.                                                      )
                                                             )
HOWARD W. REGEN                                )
and                                                              )
COAST ATM, INC.                                    )
                                                             )
            Defendants.                     )
_____)


**REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF**


DATED:   March 4, 2005          **DUANE MORRIS LLP**
                                Thomas P. McGonigle (Del. I.D. No. 3162)
                                1100 North Market Street, 12th Floor
                                Wilmington, Delaware 19801
                                Tel:   302.657.4900
                                Fax:   302.657.4901
**OF COUNSEL:**                 E-mail:tpmcgonigle@duanemorris.com

**DUANE MORRIS LLP**
Matthew A. Taylor
James L. Beausoleil, Jr.
Matthew Ryan
Tel:   215.979.1000
Fax:   215.979.1020          Attorneys for Plaintiffs

# TABLE OF AUTHORITIES

**PAGE**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.    The Covenant Not To Compete Is A Binding Contract With Valid Consideration ........... 2

II.   Money Centers Is Not In Breach Of The SPA And Is Willing And Able To Comply With All Of Its Obligations Under The SPA And The Covenant Not To Compete ..................................................................................................................... 4

III.  Howard Regen Unlawfully Tricked The Irvine Company Into Entering Into A "Renewed" Contract With His New Company, Coast ATM ............................................ 5

CONCLUSION ....................................................................................................................... 8

i

## **TABLE OF AUTHORITIES**

**FEDERAL CASES** **PAGE**

*In re American Coils*,
    187 F.2d 384 (3d Cir. 1951) ........................................................................................ 2

*Fox v. Rodel, Inc.*,
    1999 U.S. Dist. LEXIS 12246 (D. Del. July 14, 1999) ..................................................... 3

**STATE CASES**

*Faw, Casson & Co. v. Cranston*,
    375 A.2d 463 (Del. Ch. 1977) ..................................................................................... 3

*TriState Courier & Carriage, Inc. v. Berryman*,
    2004 Del. Ch. LEXIS 43 (Apr. 15, 2004) ...................................................................... 3

**INTRODUCTION**

In their opening brief, Plaintiffs set forth in detail how Howard Regen, a founder and former director of a company now owned and operated by Plaintiffs, has been systematically and flagrantly exploiting the information and goodwill obtained while working for and on behalf of his former employer, in direct contravention of the covenant not to compete he executed as part of the sale of that company. Mr. Regen does little to dispute the facts raised by Plaintiffs, relying instead on inadmissible hearsay and a strained legal arguments in his answering brief in an attempt to: (i) avoid his contractual obligations; (ii) justify his breaches of those obligations; and (iii) explain why his breaches should be ignored. The fact is, Regen entered into an enforceable covenant not to compete that was an integral part of a business transaction from which Regen benefited, and he cannot simply ignore his contractual commitments when it is in his economic interest to do so.

Plaintiffs submit this Reply Brief in further support of their Motion for a Temporary Restraining Order and Preliminary Injunctive Relief and in response to Regen's Answering Brief in Opposition. This reply expands on legal arguments and factual allegations raised in Plaintiffs' moving papers, and Plaintiffs will further respond to each challenge raised by Regen at the hearing scheduled for March 11, 2005. For all of the reasons set forth in Plaintiffs' opening brief, and for the reasons below, Howard Regen should be enjoined from continuing his unlawful conduct.

**ARGUMENT**

I.  **The Covenant Not To Compete Is A Binding Contract With Valid Consideration**

Faced with undisputable facts that render him in breach of his contractual obligations to Plaintiffs, Regen opens with an attack on the contract itself. In his answering brief, Regen refers exclusively and selectively to provisions of the Stock Purchase Agreement by which Plaintiffs acquired Available Money to argue that because he was not a party to the SPA, he received no consideration for the Covenant he signed and should therefore not be held accountable for his breaches. This argument is factually misleading and legally misguided.

First, the explicit terms of the Covenant provide that it was entered into in consideration for Plaintiff's closing on the related SPA.[1] Indeed, in closing on the SPA, Plaintiffs tendered a considerable amount of money to Regen's wife. -- a payment that would never have been made had Plaintiffs been unable to secure the Covenant with Regen, who was the principal manager of Available Money prior to its sale. Thus, the consideration for the Covenant between Regen and Plaintiffs included Plaintiffs' agreement to finalize an agreement between Plaintiffs and Regen's wife, which guaranteed significant monetary compensation to Regen's wife, which accrued to the benefit of Regen himself.

Moreover, courts are reluctant to second guess the sufficiency of contractually stipulated consideration and have therefore set the bar for establishing sufficiency relatively low. Plaintiffs more than clear that bar in this case. *See, e.g.*, *In re Am. Coils*, 187 F.2d 384, 386-87 (3d Cir. 1951) ("A very slight advantage to one party or a trifling inconvenience to the other is a sufficient consideration to support a contract when made by a person of good capacity, who is not at the time under the influence of any fraud, imposition or mistake. Whatever consideration

---

[1] The defined terms herein shall have the same meaning given them in Plaintiffs' opening brief.

2

a promisor assents to as the price of his promise is legally sufficient consideration. Legal sufficiency does not depend upon the comparative economic value of the consideration and of what is promised in return.") (citation omitted); *Fox v. Rodel, Inc.*, 1999 U.S. Dist. LEXIS 12246, at *25, 27 (D. Del. July 14, 1999) ("If the consideration has any value whatsoever, it is sufficient to support the promise and render it enforceable . . . Although the legal sufficiency of consideration is a question for judicial determination, the adequacy of consideration is not.").

Citing cases from other jurisdictions, Regen also argues that "[c]ovenants not to compete, being in restraint of trade, are construed strictly against the party seeking restriction." However, that contractual maxim has no application here. Under settled Delaware law, the Court's inquiry in this case is not subject to any heightened scrutiny because the Covenant was not part of an employment contract, but was instead part of a commercial transaction. *See, e.g., TriState Courier & Carriage, Inc. v. Berryman*, 2004 Del. Ch. LEXIS 43, at *40 (Apr. 15, 2004); *Faw, Casson & Co. v. Cranston*, 375 A.2d 463, 465 (Del. Ch. 1977) ("Covenants are subject to somewhat greater scrutiny when contained in an employment contract as opposed to contracts for the sale of a business."). Regen neither addressed nor distinguished these Delaware cases in his answering brief.

Regen has also tellingly chosen not to contradict Plaintiffs' contention that the Covenant itself is reasonable in duration and geographic scope, effectively conceding those points. Nor does Regen counter Plaintiffs' position that as a former director of Available Money, Regen is uniquely positioned to seize the knowledge, expertise, and client contacts he acquired while with Available Money in order to compete unfairly with Plaintiffs. Regen similarly does not dispute that Plaintiffs have a legitimate interest in protecting their corporate goodwill and protecting their confidential information from misuse.

3

Regen does argue that Plaintiffs are not suffering any irreparable injury, and he directs the Court to a provision in the Covenant that purportedly sets forth a formula that would be an adequate legal remedy. However, Regen completely ignores, without explanation, the several examples of irreparable injury that Plaintiffs cite in their opening brief. For example, Regen fails to address Plaintiffs' claim that his secret dealings with respect to the Argosy Casino have jeopardized Plaintiffs' relationship and reputation with that customer or that Regen's deliberate actions very likely make it extremely difficult for Plaintiffs to negotiate a renewal of their contract with Argosy Casino. Regen similarly fails to address the fact that Regen's interference with the business relationship between Plaintiffs and The Irvine Company/The Market Place has, in fact, soured those relations. In short, the facts put forth by Plaintiffs establishing that there is no adequate legal remedy for the irreparable harm to Plaintiffs' reputation, business relationships and future business expectancy brought about by Regen's continued breaches of the Covenant remain undisputed.

## II. Money Centers Is Not In Breach Of The SPA And Is Willing And Able To Comply With All Of Its Obligations Under The SPA And The Covenant Not To Compete

Regen's unfounded arguments and factual assertions that Plaintiffs are unable to pursue certain opportunities themselves or that they cannot meet their obligations to fulfill future contracts are both factually unfounded and legally deficient. For example, Regen contends that Plaintiffs are not entitled to enforce the Covenant because they allegedly breached the SPA by failing to make certain payments that were supposedly due. As is plain under the language of the SPA, and as Plaintiffs will establish at the March 11, 2005 hearing, the SPA expressly provided for a holdback of payments and specifically defined which type of stock would be satisfactory. Regen's arguments to the contrary are specious, especially given that the sellers of Available

Money are not entitled to any stock payment and any stock that was tendered to them was canceled in accordance with the express provisions of the SPA.

Specifically, under the terms of the SPA, the purchase price was subject to post-sale adjustments depending on whether or not certain identified contracts were renewed by the customers in a given time period. Plaintiffs will demonstrate at the hearing that a significant amount of the customer contracts have not been renewed. In addition, instead of securing contracts with similar, favorable terms, those contracts Regen was able to renew, were renewed with unfavorable terms that prejudiced Plaintiffs' interests and substantially impaired their investment. The purchase price was therefore adjusted pursuant to the express terms of the SPA and the final payment of stock was terminated. Therefore, any dispute over the type of stock that was tendered is completely irrelevant to this proceeding.

### III.   Howard Regen Unlawfully Tricked The Irvine Company Into Entering Into A "Renewed" Contract With His New Company, Coast ATM

The inadmissible hearsay contained in Howard Regen's Affidavit concerning Available Money's relationship with The Irvine Company and The Market Place (collectively "Irvine") is simply false. There is no basis for Regen's assertion that Plaintiffs defaulted on a contract with Irvine or that Plaintiffs failed to renew a required insurance policy. At the hearing, Plaintiffs will conclusively establish there are (and were) no outstanding commissions owed to Irvine and that Regen tricked Irvine into "renewing" its contract with his competing company, Coast ATM.

Regen also claims that Irvine refused to do business with Available Money because of some alleged, unsubstantiated dissatisfaction with Available Money and that Irvine would only sign a contract with Coast ATM because of Regen's "personal credit and prestige." Regen's explanation of his negotiations with Irvine actually undermines his own credibility. According to Regen's own declaration, Irvine did not want to do business with Plaintiffs and instead wanted

5

to do business with Regen's new company. Irvine therefore, according to Regen, signed a contract to have Coast ATM take over responsibility for providing ATMs and related services on its properties. However, unbeknownst to Irvine, Regen secretly intended, according to his own sworn testimony, to allow Available Money to continue to serve as Irvine's ATM provider. Thus, even assuming for the moment Regen's story is true, the best that can be said is that he was deceiving his own customer, Irvine, by secretly allowing Plaintiffs to continue to serve as the provider.

Of course, Regen's story is not to be believed, as it is contradicted by Irvine employees themselves. Plaintiffs' documented the that Irvine's employees in fact believed Irvine had renewed its contract with Plaintiffs -- not that it entered a separate contract with Regen's independent company. Theodore Gaddis' Affidavit, which was attached to Plaintiffs' moving papers, details how Irvine's Corporate Vice President and Comptroller were under the false impression, pursuant to conversations with Regen, that Irvine had "renewed" its contract with Plaintiffs. Moreover, the recent e-mail communications from Barbara Riegler, a Property Assistant for Irvine, further demonstrate that Irvine believed it had "renewed" its contract with Plaintiffs, again based on conversations with Regen. In short, Regen's story is directly contradicted by employees at Irvine, the very company he duped into signing these contracts, and thus cannot be believed.

Credibility and consistency issues aside, Mr. Regen's arguments are flawed on a more fundamental level. That is, Regen fails to explain why, even assuming his hearsay accounts are true, they excuse his numerous breaches of his contractual commitments or somehow render the Covenant unenforceable. The explicit terms of the Covenant which Regen signed leave no doubt as to what Regen is prohibited from doing, and by his own account, incredible as it may be,

6

Regen has violated those prohibitions. In closing, Regen's unsupported factual assertions and legal arguments both fall far short and in no way excuse the continuing breaches of his contractual commitments, which Plaintiffs hereby seek to enjoin.

## **CONCLUSION**

For the foregoing reasons and for the reasons cited in Plaintiffs' moving papers, Plaintiffs respectfully request that the Court immediately enjoin and restrain the defendant, Howard W. Regen, directly or indirectly, and whether alone or in concert with others, including any officer, agent, employee, and/or representative of Coast ATM, until a hearing and thereafter until further Order of the Court, from doing any of the following:

a. Directly or indirectly soliciting, enticing, or inducing any current or past client or customer of Money Centers of America, Inc., iGames Entertainment, Inc. and/or Available Money, Inc. to become a client or customer of Coast ATM, or any other person, firm or corporation other than Plaintiffs with respect to automated teller machines, cash management services, check cashing services, or any other product and/or service currently offered by Plaintiffs or under development;

b. Directly or indirectly soliciting, enticing or inducing any client or customer of Plaintiffs to cease doing business with Plaintiffs;

c. Managing, becoming employed by, investing in (other than less than five percent ownership in a publicly held company), becoming a partner in or otherwise owning, associating with, dealing with or advising or giving assistance of any kind or nature whatsoever to any person or entity of any kind that engages in any business activities which, if carried on directly by Regen, would constitute a breach of the foregoing restrictions;

Plaintiffs further respectfully request that the Court enter a mandatory injunction ordering the defendant, Howard W. Regen, to do the following:

d. Coordinate the removal and replacement of the two (2) Coast ATM/Key Bank machines from the Argosy property with and at the direction of Plaintiffs such that Plaintiffs are able to simultaneously replace the machines with their own products without interruption of service;

e. Provide Plaintiffs with an accounting (along with all supporting invoices and reports) of the transactions on the two (2) ATMs located on the Argosy property that are being operated by Coast ATM in association with Key Bank;

f. Provide Plaintiffs', within the next 7 days, a list of the exact location of each and every ATM machine that is or was operated by Coast ATM and/or Howard Regen in association with Key Bank or any other vendor between July 1, 2003 and the date of this Order.

| | |
|---|---|
| DATED: March 4, 2005 | **DUANE MORRIS LLP** |
| | /s/ Thomas P. McGonigle |
| | Thomas P. McGonigle (Del. I.D. No. 3162) |
| | 1100 North Market Street, 12th Floor |
| | Wilmington, Delaware 19801 |
| | Tel:   302.657.4900 |
| | Fax:   302.657.4901 |

**OF COUNSEL:**

Matthew A. Taylor
James L. Beausoleil, Jr.
**DUANE MORRIS LLP**
One Liberty Place
40th Floor
Philadelphia, Pennsylvania 19103

Attorneys for Plaintiffs

9