**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MONEY CENTERS OF AMERICA, INC., as successor in interest by merger to IGAMES ENTERTAINMENT, INC., and AVAILABLE MONEY, INC., <br><br>　　　　Plaintiffs, <br><br>　　v. <br><br>HOWARD W. REGEN and COAST ATM, <br><br>　　　　Defendants. | C.A. No. 04-CV-1516 (KAJ) <br><br>**Jury Trial Demanded** <br>**Injunctive Relief Requested** |

**PLAINTIFFS' MOTION TO VACATE DISMISSAL AND ENFORCE
SETTLEMENT AGREEMENT**

Plaintiffs, Money Centers of America, Inc. and Available Money, Inc., by their undersigned counsel, hereby move the Court for an order vacating the dismissal of this action and enforcing Defendants' compliance with the unambiguous and written terms of the settlement agreement pursuant to which this case was dismissed, and state as follows in support of their motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

1.　　Plaintiffs commenced this action nearly a year ago to enforce the terms of and to seek damages for multiple breaches of non-compete covenants entered into by Defendant Howard W. Regen in connection with Plaintiffs' multi-million dollar purchase of an established and ongoing cash access business formerly employing Mr. Regen known as Available Money, Inc. ("Available Money"). As alleged by Plaintiffs in their Complaint, in exchange for the millions of dollars of consideration it paid to purchase Available Money, iGames was to have

received all Available Money ATMs, inventory and receivables and, most importantly, a number of existing customer relationships and other goodwill associated with Available Money. To help ensure that the customer relationships and goodwill developed by Available Money and purchased by iGames would in fact be preserved, iGames negotiated the execution, by Available Money's former executives, of covenants not to compete with Available Money or to otherwise entice its customers for a specified period of time following the transaction. Among those executing such a covenant was Available Money's former director and head of operations, Howard W. Regen.

2.    Plaintiffs specifically alleged that Howard Regen repeatedly violated his covenant not to compete and engaged in unlawful conduct, which included Mr. Regen's: (i) acts of improperly profiting from two ATMs that were wrongfully withheld after the sale of the former company and that rightfully belong to Plaintiffs; (ii) repeated and ongoing poaching of Plaintiffs' customers by misrepresenting his current relationship with Available Money; and (iii) exploitation of Available Money's confidential information in order to compete unfairly with and to the detriment of Plaintiffs. Plaintiffs thus sought, by motion filed on January 27, 2005, to temporarily, preliminarily and permanently enjoin Mr. Regen from exploiting confidential and proprietary information and goodwill which iGames paid millions for.

3.    Following iGames' filing of its Complaint and its motion for preliminary injunctive relief in this Court and a January 28, 2005 teleconference with the Court, the parties entered into discussions as to the scope of a proposed consent order to temporarily enjoin Mr. Regen from further breaching the terms of his covenant not to compete pending resolution of Plaintiffs' preliminary injunction motion. The parties finalized briefing on Plaintiffs' motion on March 4, 2005 and, after expedited discovery, a hearing on the motion was held on March 11,

2005. At the conclusion of the hearing, the Court granted Plaintiffs' motion for a preliminary injunction and entered an Order to that effect on April 5, 2005. The Court also ruled at the conclusion of the hearing that, given his discovery-related conduct, sanctions should be entered against Mr. Regen. The Court ultimately entered an order that required Mr. Regen to pay to iGames certain expenses associated with the deposition as a sanction for his conduct. Mr. Regen has not paid those sanctions, which were also specifically covered in the Settlement Agreement.

4. Very shortly after the March 11, 2005 preliminary injunction hearing, the parties and their affiliates engaged in discussions in an attempt to reach an amicable settlement of Plaintiffs' action. As a result of those discussions, the parties negotiated the terms of and entered into a written settlement agreement in April 2005 (the "Settlement Agreement").[1] By the terms of the Settlement Agreement, the parties agreed to the dismissal of this action with prejudice and mutual general releases of all claims. The parties further agreed that, among other things, Howard Regen, Helen Regen and Samuel Freshman (the "Paying Parties") were to make specified cash payments to Plaintiffs at agreed upon times. For their part, iGames Entertainment, Inc. and Christopher Wolfington agreed to deliver a release of liability and consent of license agreement from a customer known as the Irvine Company.

5. The parties agreed that all actions and proceedings arising from the Settlement Agreement should be litigated in the courts within the State of Delaware, and all parties consented to the jurisdiction thereof. The parties also agreed that the prevailing party in any action to enforce the Settlement Agreement would be entitled to recover from the other party reasonable attorney's fees and costs incurred in connection with such an action.

---

[1] A true and correct copy of the Settlement Agreement is attached hereto as Exhibit "A."

6. On April 28, 2005, following execution of the Settlement Agreement, the parties filed a stipulation of dismissal of this action with prejudice, and this action was closed on the same day.

7. Since executing the Settlement Agreement, Plaintiffs have performed all conditions precedent to the payment by the Regens and Mr. Freshman of the amounts agreed to in the Settlement Agreement. With respect to the liability release from the Irvine Company, Plaintiffs' counsel delivered, on May 19, 2005, a form of consent to assignment of license agreement actually drafted by counsel for the Irvine Company (the "Assignment") and executed by iGames. The email transmitting the Assignment explained that it was drafted by counsel for the Irvine Company and that the Irvine Company was prepared to sign it upon receipt of Defendants' signatures. The delivery of that document satisfied Plaintiffs' obligations under the Settlement Agreement and thus triggered the Paying Parties' obligations to make the payments required by the Settlement Agreement.

8. Despite repeated calls and emails in the weeks following Plaintiffs' delivery of the Assignment, the Paying Parties neither executed the Assignment nor made the payments required by the Settlement Agreement. Two months have now passed since the execution of the Settlement Agreement and more than a month has passed since Plaintiffs performed all obligations under the Settlement Agreement precedent to the Paying Parties payment obligations, yet the Paying Parties have failed to comply. Plaintiffs therefore seek to vacate the stipulated dismissal of this action for the limited purpose of enforcing the terms of the Settlement Agreement.

## ARGUMENT

9. This Court has jurisdiction over this controversy because this motion arises out of a prior settlement agreement in this action. The Third Circuit has held that "[s]ettlement agreements may be enforced by means of a motion filed with the underlying cause of action and need not be asserted in the form of a complaint and answer." *Saber v. FinanceAmerica Credit Corp.*, 843 F.2d 697, 700 (3d Cir. 1988) (citing *Gross v. Penn Mutual Life Ins. Co.*, 396 F. Supp. 373, 374 (E.D. Pa. 1975)); *accord Kelly v. Greer*, 365 F.2d 669, 671 (3d Cir. 1966).

10. The Third Circuit has also held that an appropriate means of enforcing a settlement agreement is to vacate the dismissal order and proceed with enforcement of the settlement agreement. *Kelly*, 365 F.2d at 670-71.

11. Here, the parties agreed to the dismissal of this action in connection with and as contemplated by the Settlement Agreement. Since executing the Settlement Agreement and filing a stipulation of dismissal, Plaintiffs have fully complied with their obligations under the Settlement Agreement. However, Defendants and their affiliates have failed to make the payments required by the Settlement Agreement, resorting instead to dilatory tactics.

12. Plaintiffs are therefore entitled to the entry of an Order against the Paying Parties, all of whom have consented to the jurisdiction of this Court for purposes of enforcing the terms of the Settlement Agreement, directing them to make the payments required by the Settlement Agreement and compensating Plaintiffs for the costs associated with this Motion and with pursuing final resolution of the Settlement Agreement. Plaintiffs also seek sanctions against Coast ATM and Howard Regen for their bad faith attempts to forestall payment on the Settlement.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order in the form attached hereto vacating dismissal of this action for the limited purpose of directing Howard Regen and the other Paying Parties to make all payments required under Sections 5 and 6 of the Settlement Agreement, together with all costs incurred by Plaintiffs in connection with this Motion.

DATED: June 21, 2005                            **DUANE MORRIS LLP**

                                                /s/ Matt Neiderman
                                                Matt Neiderman (Del. I.D. No. 4018)
                                                1100 North Market Street, 12th Floor
                                                Wilmington, Delaware 19801
                                                Tel:   302.657.4900
**OF COUNSEL:**                                 Fax:   302.657.4901

Matthew A. Taylor
James L. Beausoleil, Jr.
**DUANE MORRIS LLP**
One Liberty Place
40th Floor
Philadelphia, Pennsylvania 19103               Attorneys for Plaintiffs