**dfinger@delawgroup.com**

| | |
|---|---|
| From: | "Beausoleil, James L." <JLBeausoleil@duanemorris.com> |
| To: | <dfinger@delawgroup.com>; <kcblaw@ureach.com> |
| Cc: | <cw@moneycenters.com>; <jwalsh@moneycenters.com>; "Neiderman, Matt" <MNeiderman@duanemorris.com>; "Taylor, Matthew A." <MATaylor@duanemorris.com> |
| Sent: | Tuesday, June 21, 2005 10:32 AM |
| Attach: | Fax-Jun-20-2005-10-12-06-0030.pdf |
| Subject: | Regen: Breach of Settlement Agreement |

Gentlemen, Mr. Wolfington has initialed the changes to the Consent to Assignment (copy attached) and I forwarded it to The Irvine Company for signature. I received the following response from Irvine's counsel:

"Jim: Thanks. The proposed revisions are fine. However, Irvine's usual practice is to sign this type of document last. Please obtain the appropriate signatures (and initials) and we'll proceed from there.

Thanks,
Ernie"

These actions on my part were not, however, necessary. They were done as yet another fruitless attempt by us to bring to an end the bad faith stalling tactics that you and your client's have employed throughout the litigation and settlement of this matter. Your continued efforts to delay final resolution of this matter are further evidence of Mr. Regen's contempt for the legal system. The Consent to Assignment that we sent to you should have been signed by Coast ATM almost a month ago. The parties to the Settlement Agreement and Irvine Company have all agreed to the language of the Consent to Assignment and, in fact, have all insisted on it being signed. There is absolutely no valid reason for Coast ATM to refuse to sign it.

In light of the above, and your failure to meet the generous deadline extension that we offered last week (and which expired last night), we have been instructed to file a Motion to enforce the settlement and to recover all attorneys fees and costs incurred since we agreed to settle pursuant to Paragraph 22 of the Settlement Agreement. We will be before the same judge that sanctioned Howard Regen for his deposition and discovery abuses and will let him know that the sanction has not been paid. We will also request additional sanctions based on his conduct to date.

We anticipate filing the motion by close of business today.

<<Fax-Jun-20-2005-10-12-06-0030.pdf>>

        James L. Beausoleil, Jr., Esquire
        Duane Morris LLP
        One Liberty Place
        Philadelphia, PA 19103-7396
        Phone 215-979-1120
        Fax 215-979-1020
        jlbeausoleil@duanemorris.com

Confidentiality Notice: This electronic mail transmission is privileged and confidential and is intended only for the review of the party to whom it is addressed. If you have received this transmission in error, please immediately return it to the sender. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

JUN.20.2005  10:03AM    MONEY CENTERS                         NO.197    P.1

# Fax Memo

**Money Centers of America**  
700 South Henderson Rd.  
Suite 325  
King of Prussia, PA 19406

Phone: 610-354-8888  
Fax:   610-992-0338

DATE: 6-20-05

TO: Jim Beausoleil

FAX NO: _____

FROM: Joey Walsh

PAGES: 4 Including cover

# CONSENT TO ASSIGNMENT OF LICENSE AGREEMENT

I.  **PARTIES AND DATE.**

   This Consent to Assignment ("Consent") is dated ___May 18, 2005___ ("Effective Date") and is by and among COAST ATM, INC., a California corporation ("Assignor"), MONEY CENTERS OF AMERICA, INC., a Delaware corporation ("Assignee") and THE IRVINE COMPANY, a Delaware corporation, with its principal place of business at 100 Innovation, Irvine, California 92617 ("Irvine").

II.  **RECITALS.**

   A.  *License Agreement.* Irvine and Assignor are parties to a Master ATM License Agreement dated November 8, 2004 (the "License Agreement"). The License Agreement is for the installation, operation and maintenance of ATM's in certain shopping centers owned by Irvine.

   B.  *Prior Assignment(s) of License Agreement.* There have been no previous assignments of the License Agreement

   C.  *Present Assignment of License Agreement.* Assignor desires Irvine to consent to Assignor's assignment to Assignee of all Assignor's right, title and interest in the License Agreement.

III.  **TERMS OF CONSENT.**

   A.  *Assignor.* For valuable consideration, receipt of which is acknowledged, Assignor

   1.  Agrees:

      a.  ~~That Assignor shall be liable for all obligations under the License Agreement including, but not limited to, monetary obligations;~~ *cw*

      b.  That it is, by a separate agreement (~~Assignment~~ *Settlement* Agreement") with Assignee, assigning to Assignee all of Assignor's right, title and interest in the License Agreement; and *cw*

      c.  ~~That it will submit to Irvine concurrently with its execution of this Agreement, a certified statement of Surchargeable Transactions conducted at each ATM Location for the period immediately prior to the Effective Date and the date of the last certified statement submitted under the License Agreement, the receipt of which shall be a condition precedent to the effectiveness of this Agreement.~~ *cw*

   2.  Represents and warrants that it has not failed to disclose to Irvine any information which, if known by Irvine, might provide grounds for Irvine to reasonably withhold its consent to the Assignment.

   3.  In consideration of Irvine's agreements set forth herein, Assignor represents that Irvine has not failed to perform, and is not in any respect in default in the performance of, any of its obligations under the License Agreement, and Assignor irrevocably and unconditionally releases and discharges Irvine, its officers, directors, employees, agents, and representatives from any and all claims, actions, causes of action, rights, demands, debts, obligations, damages, liabilities, judgments or losses of any kind whatsoever, Assignor has or may have against Irvine, its officers, directors, employees, agents or representatives arising out of or connected with any matters, acts or omissions on the part of Irvine, its officers, directors, employees, agents or representatives in connection with the negotiation and execution of the License Agreement, the administration of the License Agreement, and the leasing, operation, management or promotion of the Shopping Centers. Assignor hereby releases Irvine from all liability, causes of action, claims or losses arising out of or connected with the License Agreement prior to the date of this Agreement. Assignor hereby expressly waives the provisions of Section 1542 of the California Civil Code, which provides:

Consent to Assignment - Page 1

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM, MUST HAVE MATERIALLY AFFECTED THE SETTLEMENT WITH THE DEBTOR."

IT IS UNDERSTOOD BY ASSIGNOR THAT IF THE FACTS OR LAW WITH RESPECT TO WHICH THE FOREGOING RELEASE IS GIVEN HEREAFTER TURN OUT TO BE OTHER THAN OR DIFFERENT FROM THE FACTS OR LAW IN THAT CONNECTION NOT KNOWN TO BE OR BELIEVED BY ASSIGNOR TO BE TRUE, THEN ASSIGNOR HERETO EXPRESSLY ASSUMES THE RISK OF THE FACTS OR LAW TURNING OUT TO BE SO DIFFERENT, AND AGREES THAT THE FOREGOING RELEASE SHALL BE IN ALL RESPECTS EFFECTIVE AND NOT SUBJECT TO TERMINATION OR RECISION BASED UPON SUCH DIFFERENCES IN FACT OR LAW.

B. *Assignee*. For valuable consideration, receipt of which is acknowledged, Assignee

1. Agrees:

   a. That it has accepted the assignment made under the Assignment Agreement;

   b. To perform all of the obligations of Licensee under the License Agreement, and any supplements, amendments, riders or revisions to the License Agreement, including, but not limited to, operating the same use as specified in the License Agreement, and complying with all other monetary and nonmonetary obligations of Licensee under the License Agreement, including with respect to periods prior to the Effective Date;

   c. To pay to Irvine any and all outstanding sums due under the License Agreement as of the Effective Date, and agrees that, thereafter, all payments shall be made by Assignee in accordance with the terms of the License Agreement; and

   d. That its address for receipt of notices under the License Agreement shall be:

      700 South Henderson Road, Suite 325
      King of Prussia, PA 19406

2. Acknowledges that Irvine has not made any express or implied verbal or written representation or promise whatsoever that:

   a. Future assignments will be approved;

   b. It will prevent other businesses in the Shopping Centers from operating ATM's;

   c. Assignee will enjoy financial success in operating the ATM's at the Shopping Centers;

   d. The consideration, if any, paid for assuming the License Agreement represents the true value thereof; Assignee acknowledges that Irvine has made no representations whatsoever concerning the value of the ATM's;

   e. It will grant an extension of the Term of the License Agreement or enter into any other modification of the License Agreement; and

   f. Assignor is not in default under the License Agreement.

3. Acknowledges that it has been provided with a copy of the License Agreement, together with all amendments, supplements, riders and revisions and fully understands the obligations of Assignee under the License Agreement.

IV. **CONSENT.**

For valuable consideration, including the agreements, acknowledgments, and representations of Assignor and Assignee set forth above, Irvine consents to Assignor's assignment to Assignee of all of Assignor's right, title and interest in the License Agreement. Irvine hereby releases Assignor from any further liability with respect to the performance of the obligations of the Licensee under the License Agreement through the Effective Date.

V. **GENERAL.**

A. **AUTHORITY TO EXECUTE AGREEMENT.** Each individual executing this Agreement on behalf of a partnership or corporation represents that he or she is duly authorized to execute and deliver this consent on behalf of the corporation and/or partnership and agrees to deliver evidence of his or her authority to Irvine upon request by Irvine.

B. **ATTORNEYS' FEES.** In the event that either Irvine or Assignor or Assignee shall institute any action or proceeding against the other relating to the provisions of this Agreement or the License Agreement or any default thereunder, the party not prevailing in such action or proceeding shall reimburse the prevailing party for its actual attorneys' fees, and all fees, costs and expenses incurred in connection with such action or proceeding including, without limitation, any post-judgment fees, costs or expenses incurred on any appeal or in collection of any judgment.

C. **LIMITATION OF ACTIONS.** Any claim, demand, cause of action or defense of any kind by Tenant which is based on or arises in connection with any asserted statement, representation, arrangement, agreement or understanding between Irvine and Licensee which is not expressly stated in this Agreement shall be barred unless Licensee commences an action thereon, or interposes in a legal proceeding a defense based thereon, within 6 months after the date of the asserted inaction or omission, or the date of the occurrence of the event or action to which the claim, demand, cause of action or defense relates, whichever applies.

**IRVINE**

THE IRVINE COMPANY,
a Delaware corporation

By:_____
Name: Keith C. Eyrich
Title: President, Retail Properties

By:_____
Name: Lee Burckle
Title: Assistant Secretary

**ASSIGNEE**

MONEY CENTERS OF AMERICA, INC.,
a Delaware corporation

By: _C-M Wolfe C_____
Name: Christopher M. Wolfinton
Title: Chief Executive Officer

**ASSIGNOR**

COAST ATM, INC.,
a California corporation

By:_____
Name:_____
Title:_____

By:_____
Name:_____
Title:_____

Consent to Assignment - Page 3